Nos. 25-1018, 25-1019, 25-1024

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

JEFFERSON GRIFFIN,

*Plaintiff-Appellee*,

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Defendant-Appellant*,

and

ALLISON RIGGS, NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, VOTEVETS ACTION FUND, TANYA WEBSTER-DURHAM, SARAH SMITH, AND JUANITA ANDERSON,

*Intervenor-Appellants.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

**INTERVENOR-APPELLANTS NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, VOTEVETS ACTION FUND, TANYA WEBSTER-DURHAM, SARAH SMITH, AND JUANITA ANDERSON'S OPENING BRIEF**

NARENDRA K. GHOSH
PATTERSON HARKAVY LLP
100 EUROPA DRIVE, STE 420
CHAPEL HILL, NC 27217
(919) 942-5200

LALITHA D. MADDURI
CHRISTOPHER D. DODGE
TINA MENG MORRISON
JULIE ZUCKERBROD
JAMES J. PINCHAK
ELIAS LAW GROUP LLP
250 MASSACHUSETTS AVE, N.W., STE 400
WASHINGTON, D.C. 20001
(202) 968-4490

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................... ii

JURISDICTION ................................................................................ 1

STATEMENT OF CASE ..................................................................... 1

ISSUES PRESENTED ........................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 1

LEGAL STANDARDS ........................................................................ 4

ARGUMENT ................................................................................... 4

    I.    This dispute raises paramount federal interests and belongs in federal court. ......................................................................... 4

        A.    The Board validly removed the case under §1443(2), as the district court properly determined. ............................................... 4

        B.    The district court erred by abstaining. .................................... 5

            1.    *Burford* abstention is inappropriate in §1443 cases. .................. 7

            2.    Abstention under *Burford* is inappropriate on its own terms. .. 12

            3.    *Pullman* abstention does not apply. .................................... 16

    II.    This Court should remand with instructions to recall the case and deny Griffin's requested relief. ...................................................... 18

        A.    This Court has authority to require the district court to recall the case ...................................................................... 18

        B.    This Court should further instruct the district court to deny Griffin's preliminary injunction motion and to permit certification. ................. 20

            1.    *Laches* bars Griffin's requested relief. ................................ 21

            2.    The relief Griffin seeks is unconstitutional. ............................. 22

            3.    Griffin's requested relief would require the Board to violate federal laws. ................................................................... 27

            4.    Equitable considerations weigh overwhelmingly in favor of denying relief and permitting certification to proceed .............. 30

CONCLUSION ................................................................................ 31

CERTIFICATE OF COMPLIANCE ....................................................... 33

CERTIFICATE OF SERVICE ............................................................. 33

i

## TABLE OF AUTHORITIES

Page(s)

<u>**CASES**</u>

*Acad. of Country Music v. Cont'l Cas. Co.*,
991 F.3d 1059 (9th Cir. 2021)...................................................................19, 20

*Akers v. Caperton*,
998 F.2d 220 (4th Cir. 1993)...........................................................................21

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014)........................................................................28

*Bennett v. Yoshina*,
140 F.3d 1218 (9th Cir. 1998)..........................................................................23

*BP P.L.C. v. Mayor of Balt.*,
141 S.Ct. 1532 (2021).........................................................................3, 10, 19

*Bush v. Gore*,
531 U.S. 98 (2000)...........................................................................................27

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976).....................................................................................7, 16

*Costello v. United States*,
365 U.S. 265 (1961).........................................................................................21

*Country Vintner of N.C., LLC v. E & J Gallo Winery, Inc.*,
461 Fed. App'x 302 (4th Cir. 2012) ...........................................................13, 14

*Democracy N.C. v. N.C. State Bd. of Elections*,
476 F. Supp. 3d 158 (M.D.N.C. 2020) .............................................................24

*Duncan v. Poythress*,
657 F.2d 691 (5th Cir. 1981)........................................................................11, 13

*Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*,
710 F.2d 170 (4th Cir. 1983)..............................................................................7

*Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*,
426 U.S. 572 (1976)...........................................................................................18

*Forty Six Hundred LLC v. Cadence Educ., LLC,*
   15 F.4th 70 (1st Cir. 2021)............................................................ 19, 20

*Fusaro v. Cogan,*
   930 F.3d 241 (4th Cir. 2019).......................................................... 25

*Georgia v. Rachel,*
   384 U.S. 780 (1966).......................................................................... 8

*Greenberg v. Veteran,*
   710 F. Supp. 962 (S.D.N.Y. 1989)................................................ 9, 16

*Greenberg v. Veteran,*
   889 F.2d 418 (2d Cir. 1989) .............................................. 2, 8, 8, 10

*Griffin v. Burns,*
   570 F.2d 1065 (1st Cir. 1978) ...................................................... 22, 23

*Harman v. Forssenius,*
   380 U.S. 528 (1965)........................................................................ 11

*Haw. Hous. Auth. v. Midkiff,*
   467 U.S. 229 (1984)........................................................................ 18

*Hendon v. N.C. State Bd. of Elections,*
   710 F.2d 177 (4th Cir. 1983)............................................ 21, 22, 23

*Hole v. N.C. Bd. of Elections,*
   112 F. Supp. 2d 475 (M.D.N.C. 2000) ........................................ 30

*Hunter v. Hamilton Cnty. Bd. of Elections,*
   635 F.3d 219 (6th Cir. 2011)........................................................ 27

*In re Ga. Senate Bill 202,*
   1:21-CV-01259-JPB, 2023 WL 5334582 (N.D. Ga. Aug. 18, 2023) .................. 29

*Jamison v. Wiley,*
   14 F.3d 222 (4th Cir. 1994).......................................................... 21

*Kivett v. N.C. State Board of Elections,*
   2024 No. 24 CV 03155 (Wake Cnty. Super. Ct. Oct. 21, 2024) .......... 14

*Lamps Plus, Inc. v. Varela,*
   587 U.S. 176 (2019)........................................................................ 28

*League of Women Voters of North Carolina v. North Carolina,*
769 F.3d 224 (4th Cir. 2014)................................................ 30

*League of Women Voters of Fla., Inc. v. Detzner,*
354 F. Supp. 3d 1280 (N.D. Fla. 2018).............................. 11

*Libertarian Party of Va. v. Alcorn,*
826 F.3d 708 (4th Cir. 2016)............................................... 26

*Majority Forward v. Ben Hill Cnty. Bd. of Elections,*
512 F. Supp. 3d 1354 (M.D. Ga. 2021)............................... 28

*N.C. State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't,*
2018 WL 3748172 (M.D.N.C. Aug. 7, 2018 2018)......................... 27, 28

*Ne. Ohio Coal. for the Homeless v. Husted,*
696 F.3d 580 (6th Cir. 2012)............................................... 24

*Neufeld v. City of Baltimore,*
964 F.2d 347 (4th Cir. 1992)............................................... 14

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
491 U.S. 350 (1989)............................................ 6, 7, 9, 12, 15

*Nivens v. Gilchrist,*
444 F.3d 237 (4th Cir. 2006)......................................... 17, 18

*Project Vote/Voting for Am., Inc. v. Long,*
682 F.3d 331 (4th Cir. 2012)............................................... 28

*Quackenbush v. Allstate Ins. Co.,*
517 U.S. 706 (1996)........................... 3, 7, 8, 12, 13, 15, 19

*Republican Nat'l Comm. v. N.C. State Bd. of Elections,*
120 F.4th 390 (4th Cir. 2024) ............................................ 3, 5

*Siegel v. LePore,*
234 F.3d 1163 (11th Cir. 2000)........................................... 11

*Singleton v. Wulff,*
428 U.S. 106 (1976)............................................................ 21

*Sonda v. W. Va. Oil & Gas Conservation Comm'n,*
92 F.4th 213 (4th Cir. 2024)............................................... 17

*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ........................................................................ 6, 12

*Town of Nags Head v. Toloczko,*
    728 F.3d 391 (4th Cir. 2013) ...................................................... 15

*Voto Latino v. Hirsch,*
    712 F. Supp. 3d 637 (M.D.N.C. 2024) ........................................ 24

*W. Va. Parents for Religious Freedom v. Christiansen,*
    No. 23-1887, 2024 WL 5249493 (2024) ...................................... 17

*Willcox v. Consol. Gas Co.,*
    212 U.S. 19 (1909) ......................................................................... 6

## **CONSTITUTIONAL PROVISIONS**

N.C. Const. art. VI § 1 ...................................................................... 25

## **STATUTES**

28 U.S.C. § 1443 .................................................................................. 4

28 U.S.C. § 1443(2) ........................................................................ 1, 2

28 U.S.C. § 1447(d) ........................................................................ 3, 19

52 U.S.C. § 10101(a)(2)(B) ........................................................... 5, 29

52 U.S.C. § 20507(c)(2)(A) ........................................................... 27, 28

N.C.G.S. § 16355 .............................................................................. 26

N.C.G.S. § 16382.7 ........................................................................... 26

N.C.G.S. § 163166.25 ....................................................................... 26

N.C.G.S. § 163258.3 ......................................................................... 26

## JURISDICTION

Voter Intervenors join the jurisdictional statements of the State Board and Intervenor Riggs.

## STATEMENT OF CASE

Voter Intervenors join the statements of the case set forth by the State Board and Intervenor Riggs.

## ISSUES PRESENTED

1.     Whether the district court erred in abstaining from exercising jurisdiction under 28 U.S.C. §1443(2), which guarantees state defendants a federal forum for cases that challenge their refusal to take action that would be inconsistent with federal laws providing for equal rights, including the federal laws that would be violated by Griffin's requested relief.

2.     Whether this Court should further order the district court to recall the case and deny Griffin's requested relief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal concerns Judge Jefferson Griffin's efforts to use the judiciary to reverse his electoral defeat for a seat on North Carolina's Supreme Court. Griffin seeks a court order compelling the North

1

Carolian State Board of Elections ("Board") to discard the ballots of over 60,000 voters who followed longstanding rules and obeyed the instructions of election officials, without a scrap of evidence that any of those voters were unqualified to vote in North Carolina. Among the voters targeted by Griffin's reprisals are Tanya Webster-Durham, Sarah Smith, and Juanita Anderson, three long-registered and qualified North Carolina voters who—alongside the North Carolina Alliance for Retired Americans and VoteVets ActionFund (collectively "Voter Intervenors")—intervened to preserve their voting rights and the voting rights of tens of thousands of other voters threatened with disenfranchisement by Griffin.

If the Board were compelled to act as Griffin insists, it would violate numerous federal civil rights laws, including the National Voter Registration Act ("NVRA") and Civil Rights Act ("CRA"). The Board therefore removed Griffin's suit—first filed in the North Carolina Supreme Court—to federal court under 28 U.S.C. §1443(2), which Congress enacted to guarantee "a federal forum" to state officers charged with upholding laws like the NVRA and CRA. *Greenberg v. Veteran,* 889 F.2d 418, 421 (2d Cir. 1989).

The district court correctly determined §1443(2) permits federal

jurisdiction, consistent with this Court's recent ruling in a substantially similar case. *See Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 405-08 (4th Cir. 2024) ("*RNC*"). But rather than resolve the critical federal issues at bar in the "federal forum" guaranteed by Congress, the district court unilaterally decided to abstain under the *Burford* doctrine and remanded to state court. The district court's unsolicited abstention under *Burford*—in the face of Congress's mandate to provide a "federal forum" under a statute the court *agreed* was satisfied—is an unprecedented error that requires speedy correction.

This Court indisputably has jurisdiction to correct the district court's wayward choice to abstain, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996), and its remand order generally, *BP P.L.C. v. Mayor of Balt.*, 141 S.Ct. 1532, 1536 (2021). In addition to guaranteeing a "federal forum" for cases satisfying §1443, Congress has ensured that orders concerning it "shall be reviewable by appeal." 28 U.S.C. §1447(d). Consistent with established practice, this Court should promptly instruct the district court to recall the case from state court. But it should not stop there. Griffin's assault on a long-resolved election offends a constellation of federal rights, a conclusion that is inescapable on the record and from

extensive briefing below. This Court should therefore remand with instructions requiring the trial court—upon recalling the case—to promptly deny Griffin his requested relief under any number of independently-sufficient federal grounds.

## LEGAL STANDARDS

Voter Intervenors join the legal standards set forth by the Board and Intervenor Riggs.

## ARGUMENT

**I.    This dispute raises paramount federal interests and belongs in federal court.**

**A.    The Board validly removed the case under §1443(2), as the district court properly determined.**

Section 1443(2) provides that state defendants may remove a case that satisfies three elements: a "[1] refus[al] to do any act [2] on the ground that it would be inconsistent" with "[3] any law providing for equal rights." 28 U.S.C. §1443. This Court recently held that a substantially similar case was validly removed under §1443(2). *RNC*, 120 F.4th at 407. In *RNC*—just as here—plaintiffs sued the Board for "refus[ing] to perform Plaintiffs' requested act—striking certain registered voters from North Carolina's voter rolls—on the ground that doing so" "would violate provisions of [the CRA and the NVRA]." *Id.* at

4

395. The district court correctly recognized that *RNC* controls here and that removal under §1443(2) is proper. JA317-320. Indeed, all three elements are clearly met here.

*First*, Griffin brought this action against the Board for its "refusal to sustain his challenges and discard the votes of tens of thousands of voters." JA318; JA93-102; *see also RNC*, 120 F.4th at 405. *Second*, the Board refused to grant Griffin relief because disenfranchising thousands of voters based on registration defects *after* an election would violate the NVRA. *See* JA319-320 (holding that the Board's NVRA argument is a "colorable claim" that satisfies §1443).[1] *Third*, it is settled that the NVRA and CRA are each "law[s] providing for equal rights," within the meaning of §1443. *RNC*, 120 F.4th at 406-08.[2]

## B.    The district court erred by abstaining.

It is a bedrock principle that federal courts must decide cases that Congress has empowered them to adjudicate: "When a Federal court is

---

[1] Though not addressed by the district court, this second element is also satisfied by duties imposed on the Board under the CRA. *See* JA14 (citing 52 U.S.C. §10101(a)(2)(B)); *infra* II.B.3.

[2] Voter Intervenors join the Board's arguments as to the appropriateness of removal under §1441(b), which provides an independent basis for federal jurisdiction here.

properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909). After all, it is "Congress, and not the Judiciary, [that] defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*"). "Federal courts," consequently, "have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) ("*Sprint*") (cleaned up).

Abstention is particularly inappropriate in cases like this one, where distinct federal rights are at play, and Congress—by way of §1443's "refusal clause"—legislated the guarantee of a federal forum to adjudicate those rights. The district court was thus compelled to adjudicate—and ultimately deny—Griffin's requested relief seeking the mass disenfranchisement of voters in violation of federal law.

But even in the absence of such strong congressional commands, narrow abstention doctrines like *Burford* and *Pullman* are inapplicable here because there are no complex state administrative processes to protect from undue federal inference, and the bases for federal

jurisdiction do not turn on interpretation of state law. The district court's unsolicited invocation of *Burford* cannot be squared with §1443's grant of subject-matter jurisdiction, nor with controlling precedent, and should be reversed.[3]

> **1.** ***Burford* abstention is inappropriate in §1443 cases.**

*Burford* abstention is an "extraordinary and narrow exception to the duty of [federal courts to] adjudicate a controversy properly before it." *Quackenbush*, 517 U.S. at 728 (quoting *Colo. River*, 424 U.S. at 813). It is grounded in concerns absent here—namely, "respect for the independence of state action" where "comparatively unsophisticated" federal courts were prone to "misunderstanding [] local law," leading to "needless federal conflict with the state policy." *NOPSI*, 491 U.S. at 360 (quoting *Burford v. Sun Oil Co.*, 319 U.S. 315, 327 (1943)).

Abstention defeats the congressional purpose behind §1443

---

[3] The district court also erred in its application of *Thibodaux* abstention, which does not apply because this case was not brought in diversity jurisdiction and unambiguously concerns federal questions. *See Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170 n.9 (4th Cir. 1983); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 815 n.21 (1976).

removal. Subject-matter jurisdiction in *Burford*, *Quackenbush*, and *NOPSI*—indeed, nearly *all* abstention decisions—stemmed from diversity and federal question jurisdiction. In contrast to those more capacious grants of jurisdiction, §1443 reflects Congress' determination that the *federal forum* plays a paramount role in protecting a distinct class of federal rights. "The legislative history of the 1866 Act" from which §1443 descends, "clearly indicates that Congress intended to protect" a specific class of rights "in terms of racial equality." *Georgia v. Rachel*, 384 U.S. 780, 791 (1966). Congress "believed it necessary to provide a *federal forum* for cases which from the nature of the issues involved stir *local passions*." *Greenberg*, 889 F.2d at 421-22 (emphases added).

Section 1443 cases like this one are thus uniquely unsuitable for *Burford* abstention, which seeks to "balance" the "strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court," with "the State's interests in maintaining 'uniformity in the treatment of an 'essentially local problem.'" *Quackenbush,* 517 U.S. at 728 (citation omitted). In §1443 cases, however, Congress has already resolved the balance of these competing interests in favor of "provid[ing] a federal forum." *Greenberg*, 889 F.2d at 421-22. Any complaint of "undue

federal interference" rings hollow where §1443 applies. *NOPSI*, 491 U.S. at 362. Voter Intervenors are not aware of *any* case where a court has abstained under *Burford* despite having jurisdiction under §1443.

The Second Circuit's decision in *Greenberg* confirms that *Burford* abstention is inappropriate in §1443 cases. *See* 889 F.2d at 419. There, town residents challenged the denial of their petitions to secede from the town and incorporate a new village. *Id.* Pointing to the "state/federal conflict between the Village law … and the equal protection clause," local officials removed to federal court under §1443(2). *Id.* In a decision mirroring the district court's order here, the district court concluded *Burford* abstention was appropriate because New York had a "profound [] interest in certifying village incorporation petitions," which "involve[d] a matter of uniquely state policy[.]" *Greenberg v. Veteran*, 710 F. Supp. 962, 973-74 (S.D.N.Y. 1989), *rev'd*, 889 F.2d 418 (2d Cir. 1989).

The Second Circuit reversed the remand order. After finding §1443(2) satisfied, it concluded that abstaining would be "inconsistent with the purpose" of §1443, which was to "provide a *federal forum* for suits against state officers who uphold [federal] equal protection" rights.

9

*Greenberg*, 889 F.2d at 422 (emphasis added); *cf. BP P.L.C.*, 141 S.Ct. at 1536 (§1443 "guarantees a federal forum").

So too here. The district court erred by "abstain[ing] from the exercise of jurisdiction that has been conferred" to it by §1443's refusal clause. *NOPSI*, 491 U.S. at 358. The court glossed over the paramount importance of the federal civil rights laws at issue and Congress's assurance of a federal forum where state officers may violate those rights. The NVRA was expressly adopted by Congress to address "discriminatory and unfair registration laws and procedures" that had "a direct and damaging effect on voter participation." *RNC*, 120 F.4th at 407 (quoting 52 U.S.C. §20501(a)). The "90-day quiet period"—at issue in this case— was passed against the backdrop of congressional testimony documenting the "discriminatory and restrictive practices" employed by the "States." *Id.* The CRA Materiality Provision—also raised by the Board here—was likewise "part of Congress' effort to 'outlaw[s] some of the tactics' used by States 'to disqualify [African Americans] from voting in federal elections.'" *Id.* at 406 (quoting *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024) (alteration in original)). That history is especially pressing here, as this Court has

repeatedly noted that "election administration changes" in North Carolina have a "history of voting-related discrimination" against racial minorities "that dates back to the Nation's founding." *RNC*, 120 F.4th at 407 n.6. (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014)).

With the passage of these civil rights laws and §1443, Congress (1) created substantive federal rights protecting voters from disenfranchisement by states and (2) guaranteed a federal forum to adjudicate those rights. *Id.* at 405-08. The district court's abstention flies in the face of these clear congressional commands.

The district court also ignored that "voting rights cases are particularly inappropriate for abstention." *Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000); *Harman v. Forssenius*, 380 U.S. 528, 537 (1965) (finding abstention inappropriate given "the nature of the constitutional deprivation," a denial of the "fundamental" right to vote); *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981) (same); *League of Women Voters of Fla., Inc. v. Detzner*, 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018) (recognizing that abstention in voting rights cases "fl[ies] in the face of decades of binding law"). Rather than applying these

longstanding principles, the district court noted simply that "a state court is competent to enforce federal constitutional rights." JA325. In doing so, the district court abused its discretion by "refus[ing]" to adjudicate important federal civil rights "in deference to the States," despite the express conferral of jurisdiction from Congress. *Sprint*, 571 U.S. at 73 (quoting *NOPSI*, 491 U.S. at 368); *see Quackenbush*, 517 U.S. at 728 (recognizing "the strong *federal interest* in having certain … *federal rights*, adjudicated in *federal court*") (emphases added).

## 2.  Abstention under *Burford* is inappropriate on its own terms.

*Burford* abstention would not apply even if were not categorically improper in §1443 cases. *Burford* applies only where: (1) there are "difficult questions of state law … whose importance transcends the result in the case then at bar"; or (2) federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361-63 (quoting *Colo. River,* 424 U.S. at 814). Neither condition is met.

Nor are the purposes behind *Burford* abstention served in this case: the federal court's adjudication of Griffin's petition does not intrude upon "complex state administrative processes," and the possibility of

12

disenfranchising voters in violation of federal law does not present the kinds of "difficult questions of state law bearing on policy problems of substantial public import" that *Burford* is concerned with. *Quackenbush*, 517 U.S. at 728 (quoting *Colo. River*, 424 U.S., at 814). The district court erred in concluding otherwise. *W. Va. Parents for Religious Freedom v. Christiansen*, --- F.4th ---, No. 23-1887, 2024 WL 5249493, at *3 (4th Cir. Dec. 31, 2024).

     **i.**    The district court determined Griffin's petition implicates "unsettled questions of state law" based on an absence of existing cases deciding the issues Griffin raises. JA323. But the "mere absence of judicial interpretation does not necessarily render (state law) unsettled or uncertain." *Duncan*, 657 F.2d at 698 (quoting *B.T. Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 (5th Cir. 1977)). Instead, it underscores the outlandish and unprecedented nature of Griffin's claims to disenfranchise voters *after* an election has concluded. *See Country Vintner of N.C., LLC v. E & J Gallo Winery, Inc.*, 461 Fed. App'x 302, 305 (4th Cir. 2012) (abstention unwarranted where district court interpreted "straightforward regulatory scheme that had not been the subject of much controversy in prior state or federal cases").

13

Tellingly, the only court to have construed an argument central to Griffin's "never resident" challenge rejected it on the merits. *See* Order ¶6, *Kivett v. N.C. State Board of Elections*, No. 24 CV 031557-910 (Wake Cnty. Super. Ct. Oct. 21, 2024), *supersedeas denied*, No. P24-735 (N.C. Ct. App. Oct. 29, 2024), *pet. for writ of supersedeas and disc. review pending*, No. 281P24 (N.C.). Nor did the district court explain why Griffin's challenges were "difficult" to resolve. JA326; *Country Vintner of N.C.*, 461 Fed. App'x at 305.

In fact, resolution of this case does not require *any* interpretation of North Carolina law—regardless of what state law says, superseding federal law bars the relief Griffin seeks. *Infra* II.B.2-3. In other words, this case presents no "difficult questions of state law concerning peculiarly local issues." *Neufeld v. City of Baltimore*, 964 F.2d 347, 350–51 (4th Cir. 1992) (holding *Burford* abstention improper because resolution of federal constitutional claims does not present difficult issues of state law). It turns chiefly on federal issues that Congress instructed federal courts to resolve. *Infra* II.A, B.2-3.

**ii.** Nor would exercising jurisdiction disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public

14

concern." *NOPSI*, 491 U.S. at 361-63. Consider the substance of Griffin's claims, which seek retroactive changes to election procedures *after* the election has ended and the votes tabulated. It is Griffin, not the federal courts, who stands to "undermine the State's ability to maintain desired uniformity," *id.* at 363, and disrupt North Carolina's efforts to administer elections. *See Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013) (holding abstention inappropriate where "it [was] the [plaintiff] [t]own, not the federal courts, that [] interfered with North Carolina's governance").

And although North Carolina law designates an appellate procedure for disputes over decisions of the Board, it does not qualify as the kind of "complex state administrative procedure" that *Burford* was concerned with. *Cf. Quackenbush*, 517 U.S. at 723-24 (describing *Burford* as addressing the "experienced cadre of state judges to obtain '*specialized* knowledge'" associated with oil conservation) (quoting *Burford¸* 319 U.S. at 318, 327). In any event, *Burford* "does not require abstention whenever there exists" a "complex state administrative process," or "even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *NOPSI*, 491 U.S. at 362 (quoting *Colo. River*, 424 U.S. at 815-16).

15

**iii.** Finally, the fact that "this matter involves the right to vote in a state election and the outcome" of that election, JA323, counsels squarely against abstention. Abstaining in all cases concerning state elections under the guise of protecting "state sovereignty," JA321, would undercut §1443's *intended* purpose of protecting federal civil rights in the face of "discriminatory and restrictive practices that deter potential voters [as] employed by some States." *RNC*, 120 F.4th at 407; *see also Greenberg*, 710 F. Supp. at 973 ("[R]espect for the state interest … might very well have to give way … to the overarching federal concern" under §1443). A host of federal constitutional and statutory protections prohibit the relief Griffin seeks. *Infra* II.B.2-3. Abstaining would give states license to discriminate against voters in state elections, while eliminating the federal forum congress mandated for just such circumstances. That is squarely at odds with longstanding principles that abstention is "the exception, not the rule." *Colo. River*, 424 U.S. at 813.

### 3.   *Pullman* **abstention does not apply.**

While Griffin did not raise *Burford* abstention below at all, he passingly urged the district court to apply *Pullman* abstention. The district court properly declined that invitation. JA320 n.9.

"*Pullman* abstention requires federal courts to abstain from

deciding an unclear area of state law that raises [federal] constitutional issues because state court clarification might serve to avoid a federal constitutional ruling." *Nivens v. Gilchrist*, 444 F.3d 237, 245 (4th Cir. 2006). It may apply "when a plaintiff brings a federal case that requires the federal court to interpret an unclear state law." *Id.* (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)). But as explained*,* the proper application of the NVRA, CRA, and HAVA, as well as the U.S. Constitution, in this case do not turn on any interpretation of state law. *Infra* II.B.2-3. None of these federal questions "present[] for decision" an "unclear issue of state law." *Sonda v. W. Va. Oil & Gas Conservation Comm'n*, 92 F.4th 213, 219 (4th Cir. 2024) (citation omitted). Instead, they present straightforward questions of federal law, which federal courts have a "virtually unflagging obligation" to resolve. *Id.* (cleaned up); *Christiansen*, 2024 WL 5249493, at *5 (reversing *Pullman* abstention where federal claim did not "present" separate issue of state law).

That Appellants could theoretically obtain similar relief through separate questions of state law does not matter. *Christiansen*, 2024 WL 5249493, at *5. Abstention is not justified simply because the party invoking federal jurisdiction "might have sought relief under a similar

provision of [state law]." *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 598 (1976). It would be a "faulty" application of *Pullman* to abstain simply because "interpretation" of a separate state law question *might* "obviate[] resolution of the federal" questions necessarily presented. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 n.4 (1984).[4]

## II. This Court should remand with instructions to recall the case and deny Griffin's requested relief.

### A. This Court has authority to require the district court to recall the case.

Griffin suggests this Court lacks power to restore federal jurisdiction. That argument, if accepted, would subvert Congress's decrees regarding federal jurisdiction.

To start, this Court indisputably has jurisdiction both over orders that abstain from exercising federal jurisdiction and orders remanding cases removed under. Abstention orders satisfy the collateral order doctrine because an appellant's right to a federal forum raises "issues too

---

[4] *Pullman* also cannot support the district court's remand order because, even where it applies, courts are obliged to "retain jurisdiction over the case" while "state courts … rule on the state law question." *Nivens*, 444 F.3d at 245-46. Because the district court did *not* "retain jurisdiction over the case," its order cannot be sustained under *Pullman*.

important to be denied review." *Quackenbush*, 517 U.S. at 714 (cleaned up). And Congress determined that—unlike diversity and general federal question cases—cases removed under §1443 "shall be reviewable by appeal," 28 U.S.C. §1447(d); *BP P.L.C.*, 141 S.Ct. at 1537. This appeal presents not only federal questions of paramount importance, but questions where Congress deemed *federal appellate review* critical.

Griffin is wrong to suggest this Court is powerless to review such orders simply because the district court hastily effectuated remand. Congress's "strong pronouncement" of reviewability in §1447(d) "suggests [Congress] would not countenance a district court evading review by immediately transmitting its remand order to the state court." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1063 (9th Cir. 2021). Such an outcome would be "troubling," permitting individual district courts to foreclose appeals mandated by Congress simply by "transmitting its remand order to a state court[.]" *Id.* Similarly, the Supreme Court has held that "abstention-based remand orders" are collateral orders "immediately appealable under section 1291." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021) (citing *Quackenbush*, 517 U.S. at 712-15). District courts may not "render

19

the permitted appeal … nugatory by prematurely returning the case to the state court." *Id.* That "would defeat the very purpose of permitting an appeal and leave a defendant who prevails on appeal holding an empty bag." *Id.*

This Court therefore has jurisdiction to review—and correct—the district court's order. The proper remedy is for this Court to instruct the district court to "enter an order recalling the remand." *Acad. of Country Music*, 991 F.3d at 1070; *see also Forty Six Hundred*, 15 F.4th at 81 (similar). Such relief is consistent with the "long and storied history of comity and cooperation between state and federal courts." *Forty Six Hundred*, 15 F.4th at 81. And it imposes no prejudice because "the [state] case has progressed" only "modestly … in that forum." *Id.* at 78.

**B. This Court should further instruct the district court to deny Griffin's preliminary injunction motion and to permit certification.**

The district court erred by abstaining from resolution of the urgent federal questions before it. This Court should instruct it not only to recall

the case, but also to promptly issue an order denying Griffin's requested

relief, which is barred by a host of federal rights and laches.[5]

### 1. *Laches* bars Griffin's requested relief.

Laches bars a claim where there is a "(1) lack of diligence by the

party against whom the defense is asserted, and (2) prejudice to the party

asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961).

This doctrine applies with special force to election disputes. Parties

"having grievances based on election laws [must] bring their complaints

forward for preelection adjudication when possible." *Hendon v. N.C. State

Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983).

Griffin seeks precisely the kind of improper post-election relief

barred by this Circuit's precedent. *Id.* (declining to grant relief because

plaintiff failed to challenge the constitutionality of longstanding election

---

[5] While unremarked upon by the district court, these issues are embedded within its remand order and subject to this Court's review. *See Jamison v. Wiley*, 14 F.3d 222, 231 (4th Cir. 1994); *Akers v. Caperton*, 998 F.2d 220, 223 (4th Cir. 1993) (holding "pendent appellate jurisdiction" permits consideration of "issues [that] substantially overlap and [where] review will advance the litigation or avoid further appeals"); *cf. Singleton v. Wulff,* 428 U.S. 106, 121 (1976) (appeals courts have "discretion" to resolve matters in first instance, including "where the proper resolution is beyond any doubt or where injustice might otherwise result") (cleaned up).

procedures until after the election concluded). He cannot explain why he could not have challenged the election rules at issue—each in place for *years*—ahead of the 2024 election. And the prejudice to voters is self-evident: granting Griffin's relief retroactively disenfranchises thousands of qualified and rule-abiding voters, including Voter Intervenors. JA163 ¶¶4-5; JA165 ¶¶4-5; JA167 ¶¶4-5. Griffin's attempt "to undo the ballot results in a court action" is thus precluded by this Court's precedents. *Hendon*, 710 F.2d at 182.

### 2. The relief Griffin seeks is unconstitutional.

Griffin cannot succeed on the merits of his petition because the relief he seeks would violate the U.S. Constitution's guarantees of due process, equal protection, and the right to vote.

***Substantive Due Process.*** Substantive due process prohibits Griffin's post-election effort to disenfranchise voters who reasonably relied on long-standing and established voting procedures.

The facts here mirror those in *Griffin v. Burns*, where the Rhode Island Supreme Court retroactively invalidated absentee ballots as contrary to state law, despite their longstanding use. 570 F.2d 1065, 1067 (1st Cir. 1978). The First Circuit reversed and held "Rhode Island could not, constitutionally, invalidate the absentee [ballots] … where the effect

of the state's action had been to induce the voters to vote by this means."
*Id.* at 1074. As here, because voters "were doing no more than following the instructions of the officials charged with running the election," it was unreasonable to expect voters to "at their peril, somehow [] foresee" a future interpretation of state law that would invalidate their ballots after the fact. *Id.* at 1075-76. To invalidate ballots cast by voters who simply followed established election rules would be a "fundamental unfairness," resulting in a "flawed [electoral] process" and "due process violation." *Id.* at 1076-78. *Griffin*'s principles are "settled" law within this Circuit. *Hendon*, 710 F.2d at 182.

Applying *Griffin*, the Ninth Circuit has held that a substantive due process violation occurs "if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (June 23, 1998). This case plainly satisfies both elements, as Voter Intervenors' own experiences establish. JA124-129; JA163-164 ¶¶4-7; JA165-166 ¶¶4-6;

JA167-168 ¶¶4-6. It would be a gross injustice, and a violation of due process, to punish these voters for "state actions" that "induce[d]" them to, in Griffin's misguided view, "miscast their votes." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 597 (6th Cir. 2012).

***Procedural Due Process.*** Griffin also seeks relief that would violate procedural due process. Courts have broadly held that voters suffer a procedural due process violation "if election officials reject their ballots" without being "notified or afforded any opportunity to respond." *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 226 (M.D.N.C. 2020) (citation omitted); *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637, 652 (M.D.N.C. 2024) (enjoining same-day registration law requiring "the removal of a cast ballot without any notice or possibility of cure").

The Board cannot disenfranchise 60,000-plus voters at Griffin's insistence given his failure to provide them notice, JA110-114, as required by law. Instead, Griffin placed the onus on *voters* to determine whether and on what basis they were challenged. JA112-114; JA117. Many voters—including several Voter Intervenors—lacked the necessary technology to even access Griffin's half-baked notice efforts. JA164 ¶9;

JA166 ¶8; JA168 ¶8. Because none of the challenged voters received adequate notice of Griffin's protests—or an attendant opportunity to be heard—they cannot be deprived of their fundamental voting rights.

***Right to Vote.*** Any post-election changes to the state's election rules that result in the disenfranchisement of voters would also severely burden the right to vote in violation of the First and Fourteenth Amendments. Under the applicable *Anderson-Burdick* test, if a challenged process severely burdens voters' rights, it can only survive if it is narrowly drawn to advance a compelling state interest. *See Fusaro v. Cogan*, 930 F.3d 241, 257-58 (4th Cir. 2019).

Griffin's attempt to discard tens of thousands of ballots severely burdens each of the affected voters' fundamental right to vote—indeed, it revokes it entirely. There is no state interest, let alone a compelling one, in disenfranchising thousands of voters—many of whom have voted for *years* under their current registrations—after they have already voted. Griffin has not even offered evidence that any of the challenged voters is unqualified to vote under state law. *See* N.C. Const. art. VI, §§1, 2. Voter Intervenors, for instance, are all citizens and North Carolina residents over the age of 18 who complied with North Carolina's rigorous photo

identification laws. JA163 ¶¶1-2; JA165 ¶¶1-2; JA167 ¶¶1-2. Griffin's desire to retroactively change election rules to reverse his electoral loss is not the sort of "compelling state interest" that warrants disenfranchising thousands of unassuming North Carolinians. *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 717 (4th Cir. 2016).

***Equal Protection.*** Griffin also would have the Board violate the Equal Protection Clause by discarding ballots cast by early and absentee voters—but not identically-situated election day voters.

In North Carolina, all voters are subject to the same eligibility requirements and registration rules. N.C.G.S. §§163-55, 163-57. Once registered, *id.* §163-82.7, North Carolina permits registered voters to choose how to cast their ballots. *See id.* §163-166.25 (in-person voting), §163-166.40 (early voting), §163-226 (absentee voting), *id.* §163-258.3 (military and overseas voting). After voters cast ballots in compliance with the rules governing their chosen method of voting, North Carolina law affords equal weight to all ballots and all voters, regardless of voting method. These voters are, at this point, identically situated.

Having "granted the right to vote on equal terms" to each voter regardless of voting method, North Carolina however "may not, by later

arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000). Yet Griffin seeks to compel the Board to count some voters' ballots—but not others—based solely on their voting method in violation of the Equal Protection Clause. *Id.* (explaining clause guarantees that "equal weight" should be "accorded to each vote and [] equal dignity owed to each voter").

Voter Intervenors again illustrate the point. If Griffin prevails, each will be disenfranchised simply because they happened to vote early in-person. *See* JA164 ¶7; JA166 ¶6; JA168 ¶6. Had they instead voted on election day, their ballots would be safe and unchallenged. That is precisely the sort of "later arbitrary and disparate treatment" equal protection guards against. *Bush*, 531 U.S. at 104; *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 235 (6th Cir. 2011).

### 3. Griffin's requested relief would require the Board to violate federal laws.

Griffin's efforts to retroactively challenge the registration status of tens of thousands of voters is incompatible with the federal protections afforded to voters under both the NVRA and CRA.

***NVRA.*** The NVRA prohibits the mass voter removals Griffin seeks here. 52 U.S.C. §20507(c)(2)(A); *N.C. State Conf. of NAACP v. Bipartisan*

*Bd. of Elections & Ethics Enf't*, 1:16CV1274, 2018 WL 3748172, at *7 (M.D.N.C. Aug. 7, 2018). Griffin's contention that he does not seek to remove voters from the rolls and instead only wants to discard their ballots, JA60, is a "distinction without a difference." *Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1368 (M.D. Ga. 2021) (rejecting this argument). After all, the purpose of the NVRA is to ensure the "right to exercise the[] franchise … not be sacrificed." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

Griffin's challenges would indisputably be barred if raised during the 90-day pre-election quiet period, which ensures voters are not erroneously removed close to an election. *See* 52 U.S.C. §20507(c)(2)(A); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). That protection would be gutted if losing candidates could utilize post-election challenges to accomplish what is barred before election day. *Cf. Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019).

**CRA.** Griffin's challenge also seeks relief that would violate the Materiality Provision of the CRA. which bars denying the right to vote "because of an *error or omission* on any record or paper relating to any *application*, *registration*, or other act requisite to voting, if such error or

28

omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. §10101(a)(2)(B) (emphases added). The purportedly missing identification numbers are immaterial in this context—North Carolina officials long ago "determine[ed]" these voters are "qualified under State law," *id.*, notwithstanding the alleged omission of certain information. *E.g.*, JA163-164 ¶¶4-7; JA165-166 ¶¶4-6; JA167-168 ¶¶4-6; s*ee, e.g.*, *In re Ga. Senate Bill 202*, 1:21-CV-01259-JPB, 2023 WL 5334582, at *8 (N.D. Ga. Aug. 18, 2023).

In fact, Griffin has not even demonstrated a violation of HAVA or its implementing state statute. The only support Griffin has provided in support of his challenges is an *absence* of information in what appears to be a list of registered voters in the state. JA155 ¶¶11-14 But there are many possible explanations for why a voter's registration file may be incomplete, including data entry or transcription errors or provision of the requisite numbers in a previous application under a different registration record than the one challenged. JA128-129 n.16. Others may have registered to vote well before HAVA even asked applicants to provide such information. JA128-129 n.16. And many other voters likely

provided this purportedly missing information when they voted, like Intervenors. JA164 ¶7; JA166 ¶6; JA168 ¶6.

> **4.    Equitable considerations weigh overwhelmingly in favor of denying relief and permitting certification to proceed.**

Griffin's claim of irreparable harm boils down to his mistaken belief that "without judicial review, [he] will lose the election." JA182. But Griffin *already* lost the election at the ballot box, and he has no right to *win* elected office. While his "loss in an election" is surely "a disappointment," it "cannot be considered as irreparable harm for preliminary injunction analysis." *Hole v. N.C. Bd. of Elections*, 112 F. Supp. 2d 475, 478-79 (M.D.N.C. 2000).

Any harm to Griffin is also sharply outweighed by the foundational rights of the voters he seeks to disenfranchise and "[t]he public interest," which "favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C.*, 769 F.3d at 247 (citation omitted). Griffin's requests would wreak havoc on North Carolina's electoral processes and violate the fundamental constitutional and statutory rights of thousands of North Carolina voters, including Voter Intervenors. This Court should ensure Griffin's request to "prohibit the counting of" thousands of votes is denied. JA177.

30

## CONCLUSION

This Court should reverse the district court's abstention ruling and remand with instructions for the district court to recall this case and deny Griffin's motion for preliminary relief.

January 15, 2025                    Respectfully submitted,

                                   /s/ Lalitha D. Madduri
                                   Lalitha D. Madduri
                                   Christopher D. Dodge
                                   Tina Meng Morrison
                                   Julie Zuckerbrod
                                   James J. Pinchak
                                   ELIAS LAW GROUP LLP
                                   250 Massachusetts Ave, N.W.,
                                   Suite 400
                                   Washington, D.C. 20001
                                   Telephone: (202) 968-4490
                                   lmadduri@elias.law
                                   cdodge@elias.law
                                   tmengmorrison@elias.law
                                   jzuckerbrod@elias.law
                                   jpinchak@elias.law

                                   Narendra K. Ghosh
                                   N.C. Bar No. 37649
                                   PATTERSON HARKAVY LLP
                                   100 Europa Drive, Suite 420
                                   Chapel Hill, NC 27217
                                   Telephone: (919) 942-5200
                                   nghosh@pathlaw.com


                                   *Counsel for Intervenor-Appellants the North Carolina Alliance for Retired Americans, VoteVets Action Fund, Tanya Webster-Durham, Sarah Smith, and Juanita Anderson*

32

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Local Rule 32(a)(7)(B) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the foregoing contains 6,001 words, excluding the portions exempted by Rule 32(f).

/s/ Lalitha D. Madduri
Lalitha D. Madduri

## CERTIFICATE OF SERVICE

On this 15th day of January, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Lalitha D. Madduri
Lalitha D. Madduri

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1019__          Caption: __Jefferson Griffin v. NC Alliance for Retired Americans et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__North Carolina Alliance for Retired Americans, VoteVets Action Fund, Tanya Webster-Durham,__
(name of party/amicus)

__Sarah Smith, and Juanita Anderson__

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Lalitha Madduri _____     Date: ____January 15, 2025____

Counsel for: NC All. for Retired Americans, et al.

- 2 -

[Print to PDF for Filing]